PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiffs and the Proposed Class

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONYA VALENZUELA and TOMMY PURSCELLEY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>3 DAY BLINDS LLC, a Delaware entity,<br><br>Defendant. | Case No. **'26 CV 0973 H    SBC**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF B&P CODE SECTION 17529.5 (UNLAWFUL SPAMMING)** |

- 1 -

CLASS ACTION COMPLAINT

## I.    NATURE OF ACTION

1.    Defendant 3 Day Blinds LLC is a prolific spammer.  It markets window treatment products and related services through large-scale, unlawful email campaigns that embody every abusive practice that California law prohibits: falsified and misleading header information; nonexistent sending addresses; spoofed domain names; obfuscated routing data; Rapidly rotated sending domains and IP addresses to avoid blacklisting; boilerplate footer language that does not accurately identify the sender; mass transmission practices that demonstrate indiscriminate blasting; and misleading subject lines.  It does so to bypass spam filters, confuse consumers, and increasing open rates.

2.    These practices hallmarks of sophisticated spam operations designed to maximize penetration into consumer inboxes while minimizing traceability and accountability.  Defendant's conduct reflects a calculated strategy: conceal its identity, evade filtering safeguards, and induce unwary recipients to engage with advertising they did not request and would not otherwise open.

3.    Fortunately, California's robust Anti-Spam Law imposes both strict liability and liquidated damages on companies like 3 Day Blinds that benefit from deceptive unsolicited commercial e-mail advertisements (i.e., "spam").  It dispenses with the requirement of proving actual damages, intent, or scienter, and forces companies to actively monitor their e-mail promotions by imposing exceptionally broad liability. [1]

---

[1]    *See Hypertouch, Inc. v. ValueClick, Inc.*, 192 Cal. App. 4th 805, 829-30 (Cal. Ct. App. 2d Dist. 2011) (Section 17529.5 "impos[es] strict liability on advertisers who benefit from (and are the ultimate cause of) deceptive e-mails"); *Id*. at 822 (Section 17529.5 "does not require the plaintiff to prove that it relied on the deceptive commercial e-mail message or that it incurred damages as a result of the deceptive message"); Id at 821 ("Section 17529.5 … does not include any 'scienter' or intent requirement"); *Id*. at 820 ("[S]ection 17529.5 does not require the plaintiff to show that the defendant actually made a false or deceptive statement…. [B]y its plain terms, the statute is not limited to entities that actually send or initiate a deceptive commercial e-mail, but applies more broadly to any entity that advertises in those e-mails."

- 2 -

## II.    JURISDICTION AND VENUE

4.    Each named Plaintiff is a resident of California who received spam e-mail from Defendant.  The class consists of residents of all fifty U.S. states who have received unwanted spam from Defendant.

5.    Defendant is a limited liability corporation with its principal place of business in California.

6.    This Court has subject matter jurisdiction of this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is at least minimal diversity because at least one Plaintiff and Defendant are citizens of different states.

## III.    FACTUAL ALLEGATIONS

7.    Plaintiff Valenzuela is a California resident and owner of the e-mail address sonya.valenzuela@aol.com.  She has received countless spam from Defendant.  As just one example, on January 15 2026, she received a spam e-mail promoting Defendant's products from the address "nore@bagnore.com."  The Subject line of the spam stated "Act Now: BOGO 50% Off Window Treatments."

8.    Plaintiff Purscelley is a California resident and citizen and is the owner of the e-mail address tommyp2019@yahoo.com.  Defendant spams him relentlessly.  As just one example, on January 6 2026, he received a spam e-mail promoting Defendant's products from the address "WjllingtonIronhjprtihj@iltyplrebakingcompany.com."  The subject line of the e-mail stated "Save Big: Buy 1 Get 1 50%Off Blinds!" (Unicode text and odd spacing included in original spam e-mail to evade spam filter).

9.    Each of the previously-identified spam e-mails were sent from "spoofed" e-mail address to conceal the identity of the true sender.  Indeed, after receiving the e-mails, each Plaintiff searched the publicly available WHOIS database to identify the sender associated with the domain used in the various "From" fields – and none of the plaintiffs

were able to do so because none of the sending domains were registered to, publicly associated with, or traceable to Defendant through WHOIS or any other public registry.

10. The subject lines of the spam e-mails both promised substantial discounts on window treatments. This is misleading because the promotion was not a limited-time or genuine price reduction, but rather an evergreen, continuously available pricing structure that reflects Defendant's ordinary course of business. The subject lines conveyed to a reasonable consumer that: (1) A temporary promotional event is occurring; (2) the discount represents a meaningful departure from Defendant's regular pricing; and (3) the consumer is receiving a time-sensitive bargain not otherwise available. In reality, Defendant perpetually advertises the same "buy one, get one 50% off" structure as its standard pricing model, such that the phrase does not describe a discount from a bona fide regular price; instead, it functions as a pricing formula dressed up as a promotion.

11. California law is clear that a represented "sale" or "discount" must be measured against a legitimate former price at which the product was actually offered for a reasonable period of time. An ongoing, indefinite offer cannot truthfully be described as a limited promotional reduction. When a business continuously markets products under the same "discount" structure, the so-called promotion becomes the baseline price. In that context, the subject lines are misleading because they (1) imply urgency where none exists; (2) suggest a temporary markdown when the price is effectively permanent; (3) create the false impression of savings compared to a bona fide regular price; and (4) induce consumers to open email under the belief they are accessing a special, time-limited opportunity.

12. The misrepresentations in the subject lines were material because each plaintiff was actually deceived into opening spam that they would have otherwise deleted and searching for an illusory discount that did not exist.

13. An analysis of the code of each spam e-mail also revealed both hidden text and Unicode manipulation. Spammers use these tactics because most spam filters rely— at least in part—on pattern recognition, keyword matching, and reputation scoring tied to

- 4 -

specific strings. By inserting zero-width Unicode characters, homoglyphs (look-alike characters from different alphabets), or invisible padding into subject lines and sender names, spammers create text that looks normal to a human reader but is technically a different character sequence to filtering software. This defeats exact-match detection rules, blacklist signatures, and heuristic models trained on known spam phrases. Similarly, hidden HTML elements (e.g., display:none, zero-font text, off-screen positioning) can be used to manipulate content analysis engines—either by diluting keyword density, inserting "benign" words to skew scoring, or embedding tracking artifacts—without altering what the recipient sees.  The goal was simple: preserve the visual marketing message while subtly altering the machine-readable structure so automated defenses fail to recognize the messages as spam.

14.    Each of the preceding Plaintiff's e-mail addresses are "California e-mail addresses" because Plaintiffs ordinarily access the e-mail addresses from a computers in California.  *See* Bus. & Prof. Code § 17529.1(b).

15.    The spams identified above are "Unsolicited Commercial e-mail advertisements" because plaintiffs had no pre-existing relationship with Defendant and because the e-mails were initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit.  *See* Bus. & Prof. Code § 17529.1(c).

16.    None of the Plaintiffs ever gave "direct consent" to receive commercial e-mail advertisements from Defendant or its marketing agents. Indeed, "direct consent" under the statute requires a unique level of specificity and clarity that must be informed, knowing, and explicit  — meaning that consumers must be told clearly that they are agreeing to receive advertising emails from a particular sender, and for what purpose, at the time they provide their email address.

17.    The above spams all violate Bus. & Prof. Code § 17529.5 in three separate and distinct ways:

CLASS ACTION COMPLAINT

a. **Unauthorized Use of a Domain Name in Violation of Section 17529.5(a)(1).** A domain name is the unique Internet address used to identify the origin of an email transmission. It functions as a digital signature and is intended to enable recipients to verify the sender's identity. Each of the emails described above violates Business and Professions Code § 17529.5(a)(1) because they advertise Defendant's products using domain names that were neither owned by, registered to, nor authorized by Defendant, thereby misrepresenting the identity of the sender. In each instance, Defendant advertised in commercial emails that used third-party or fabricated domain names without authorization, thereby disguising the true sender and frustrating recipients' ability to identify who was actually behind the message. This practice constitutes the unauthorized use of domain names and the misrepresentation of sender information prohibited by § 17529.5(a)(1), regardless of whether Defendant's brand name appears elsewhere in the email content.

b. **Misrepresented Header Information In Violation of Section 17529.5(a)(2).** An email header is the portion of an electronic mail message that contains the routing, addressing, and technical information necessary for the message to be transmitted and delivered across the internet. Unlike the visible body of an email, the header records the path the message takes from the sender to the recipient and includes fields such as the "From," "To," "Date," "Subject," and the originating Internet Protocol (IP) address. The header serves as the digital equivalent of a postmark and return address on a physical letter—it discloses who sent the message, the servers through which it traveled, and how it reached the recipient's inbox. Each of the emails described above contains misrepresented header information in violation of Business and Professions Code § 17529.5(a)(2) because the "From" addresses and associated domains falsely identify or obscure the true sender

- 6 -

of the message, preventing recipients from determining who actually sent the email.  In each case, the header information is misrepresented because it does not accurately or truthfully identify the person or entity who initiated and benefited from the email, which is precisely the deceptive practice § 17529.5(a)(2) was enacted to prohibit.

c. **Deceptive Subject Line and Contents in Violation of Section 17529.5(a)(3).**  This section prohibits deceptive subject lines and imposes an affirmative duty of accuracy in the material facts contained in the content of commercial e-mail.  Each of the emails described above also violates Business and Professions Code § 17529.5(a)(3) because the subject lines are likely to mislead a reasonable recipient about the nature and substance of the message, falsely implying eligibility, exclusivity, or genuine discounts that do not exist.

18.    Under Business & Professions Code §17529.5(b)(1)(B)(ii), each unlawful email constitutes a separate "incident" for purposes of statutory damages. The statute is structured to treat every deceptive or misleading email as an independent violation because each transmission represents a distinct act of deception and a separate invasion of the recipient's privacy and inbox. The Legislature expressly adopted this "per email" approach to deter mass spamming campaigns, recognizing that spam's harm multiplies with each delivery, regardless of whether the content is identical.

19.    Although a plaintiff need not plead or prove actual damages to bring a claim under the statute, each Plaintiff has in fact suffered concrete, particularized harm as a result of Defendant's conduct.  Each Plaintiff spent valuable time and attention identifying, reading, and deleting the deceptive email; spent time searching for an illusory discount that did not exist; incurred opportunity costs and lost productivity; and suffered depletion of device and network resources, including storage space, bandwidth usage on a metered data plan, and battery life.

CLASS ACTION COMPLAINT

20.    The unauthorized domain name, misleading headers and subject lines also invaded Plaintiffs' privacy and disrupted the ordinary use and enjoyment of Plaintiffs' email accounts, diminishing their value as a communication tool and necessitating additional filtering and security precautions. These injuries were directly caused by Defendant's unlawful emails and are redressable by statutory and injunctive relief.

21.    Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements. In fact, Defendant actively defies California law, as shown by the fact that Defendant continues to spam Plaintiffs and other California residents despite the existence of this lawsuit.

## IV.    CLASS ACTION ALLEGATIONS

22.    Plaintiffs bring this action on behalf of all persons similarly situated and seek certification of the following class:

> All persons in the United States who have accessed their e-mail while in California who have received any commercial e-mail from Defendant where such email(s) contained: (1) a falsified, misrepresented, or forged domain name; (2) falsified, misrepresented, or forged header information; or (3) false or misleading subject line or contents in violation of California Business and Professions Code § 17529.5, within the four years preceding the filing of this action.

23.    The above-described class of persons shall hereafter be referred to as the "Class." Excluded from the Class are any and all past or present officers, directors, or employees of Defendant, any judge who presides over this action, and any partner or employee of Class Counsel. Plaintiffs reserve the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with a motion for class certification, or at any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

24.    **Numerosity.** The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is

- 8 -

unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, but Plaintiffs are informed and believes, and thereon, alleges that there are at least 10,000 members of the Class.

25.    **Typicality.**  Plaintiffs' claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Defendant's course of conduct as described in this Complaint.

26.    **Adequacy of Representation.**  Plaintiffs are adequate representatives of the Class and will fairly and adequately protect the interests of the Class.  Plaintiffs have retained attorneys who are experienced in the handling of complex litigation and class actions, and intend to prosecute this action vigorously.

27.    **Predominance of Common Questions of Law or Fact.**  Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

 a.  Whether Defendant sent unsolicited commercial e-mail to Class members;

 b.  Whether the e-mails were sent in violation of Business and Professions Code Section 17529.5.

28.    **Superiority.**  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable.

29.    **Ascertainability**.  Defendant keeps computerized records of its sales and customers through, among other things, databases storing customer orders, customer order histories, customer profiles, customer loyalty programs, and general marketing programs. Defendant has one or more databases through which a significant majority of members of the Class may be identified and ascertained, and they maintain contact information, including email addresses.

- 9 -

## V.    CAUSE OF ACTION

### Violation of Cal. Business & Professions Code § 17529.5

30.    Each plaintiff received the above unsolicited commercial e-mail at a California e-mail address within one year prior to filing the Complaint at a California e-mail address.

31.    As shown above, each of the spam violated one or more provisions of Section 17529.5.

32.    Defendant is strictly liable for violation of Section 17529.5 for sending each spam and is liable in the amount of $1,000 per spam per class member.

33.    Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of Section 17529.5 that would justify a reduction in liquidated damages.

34.    Plaintiffs and every Class member who received any violative e-mail are entitled to $1,000 in liquidated damages per e-mail from Defendant (Cal. Bus. & Prof. Code § 17529.5(b)(1)(B)(ii)), and to recover reasonable attorney's fees and costs (Cal. Bus. & Prof. Code § 17529.5(b)(1)(C)).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seeks judgment against Defendant as follows:

a.  For an order certifying that the action be maintained as a class action, that Plaintiffs be designated as class representatives, and that undersigned counsel be designated as class counsel;

b.  For all available declaratory, legal, and equitable relief including injunctive relief;

c.  For statutory damages of $1,000 per violative e-mail;

d.  For punitive damages;

e.  For attorneys' fees and costs as allowed by law; and

f.  For any and all other relief at law or equity that may be appropriate.

- 10 -

Dated:  February 14, 2026                 PACIFIC TRIAL ATTORNEYS, APC


By: */s/ Scott J. Ferrell*
Scott J. Ferrell
Attorneys for Plaintiff and the Proposed Class

- 11 -